UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

WANDA BAEZ,

        Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF EDUCATION; AMANDA LAZERSON, in her official and individual capacity as Principal of I.S. 162; JESSICA MAZARELLI, Assistant Principal of I.S. 162, in her official and individual capacity

        Defendants.

---

**MEMORANDUM & ORDER**
24-CV-06597 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    *Pro se* Plaintiff Wanda Baez, a teacher formerly assigned to Intermediate School 162, the Willoughby School ("I.S. 162") of the New York City Department of Education ("DOE"), brings this First Amendment retaliation action under 42 U.S.C. § 1983 against the DOE; the Principal of I.S. 162, Amanda Lazerson ("Lazerson"); and the Assistant Principal of I.S. 162, Jessica Mazzarelli ("Mazzarelli"). *See* ECF No. 1 ("Complaint").[1] Defendants move to dismiss the Complaint on the following grounds: (1) the claims are, in large part, barred by the relevant statute of limitations; and (2) Plaintiff otherwise fails to state a claim for relief. *See* ECF No. 19 ("Motion to Dismiss"). For the reasons that follow, the Court GRANTS Defendants' motion and DISMISSES the Complaint in its entirety.

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND[2]

Plaintiff has worked for the DOE at I.S. 162 as an English teacher since 1993.  ECF No. 1 ¶ 1.  She was elected as a chapter leader for the United Federation of Teachers ("UFT") in May 2018.  *Id.* ¶ 3.  Plaintiff alleges that, as a chapter leader, she has:

> [spoken] on behalf of others at the School on matters including, but not limited to, ensuring that the School's administration abide by the DOE-UFT contract terms, providing teachers with the necessary curriculum and supplies to be able to provide an adequate level of education, creating and maintaining a safe school environment, and ensuring a safe and equitable learning environment for all of our students.

*Id.*  She also alleges that, before becoming a chapter leader, she consistently received "Satisfactory" and/or "Effective" evaluations in her Annual Professional Performance Reviews, and was "never subject to any formal disciplinary action."  *Id.* ¶¶ 4, 5.

Plaintiff alleges that, between the 2018–2021 school years, she took several actions against Lazerson.  *See id.* ¶¶ 8–16.  Specifically, on February 7, 2019, Plaintiff alleges that she filed a UFT complaint (the "UFT Complaint") regarding Lazerson's reluctance to attend a consultation committee meeting for staff to voice their concerns and discuss matters about curriculum and safety at the school.  *Id.* ¶ 8.  Plaintiff further alleges that, around that same time, she filed two more grievances:  the first concerned Lazerson's failure to host an initial planning conference for a teacher observation ("Grievance One"); the second concerned modification of the school bell schedule without a vote ("Grievance Two").  *Id.* ¶ 10.  At the March 19, 2019, consultation committee meeting, she also raised concerns about excessive paperwork requirements for teachers and a lack of basic school supplies.  *Id.* ¶ 12.  On May 2, 2019,

---

[2]   The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

2

Plaintiff allegedly informed Lazerson that two UFT Special Education specialists would attend the next consultation meeting to discuss violations of special education students' individualized education plans ("IEPs") and to hold an exit meeting with Lazerson. *Id.* ¶ 15. Plaintiff further alleges that, on October 2, 2019, she testified in a DOE Office of Special Investigation ("OSI") case that she personally filed based on Lazerson's alleged falsification of grades and failure to provide English language learners with mandated services. *Id.* ¶ 17. In December 2019, Plaintiff alleges that she notified Lazerson that an attorney informed Plaintiff that she would likely be subpoenaed to testify as a witness on behalf of a former teacher in an upcoming New York Education Law Section 3020-a proceeding.[3] *Id.* ¶ 19. Plaintiff contends that on February 1, 2021, she testified in another OSI case regarding Lazerson's failure to provide special education students with an appropriate teacher. *Id.* ¶ 24. Plaintiff further claims that, on April 21, 2021, she testified on behalf of another former teacher during that teacher's Section 3020-a disciplinary proceeding. *Id.* ¶ 26.

Plaintiff alleges that shortly after becoming the union chapter leader, "Lazerson initiated . . . actions in retaliation for [her] speaking up on various matters of concern for students, teachers, and the School's community members alike." *Id.* ¶ 6. Specifically, she claims that Mazzarelli issued "poor observation reports" following classroom observations on several occasions in 2019 and 2021. *Id.* ¶¶ 9, 13, 18, 20, 24, 27. Plaintiff also claims that she received multiple summonses to disciplinary conferences and related disciplinary letters. *Id.* ¶ 6. On April 18, 2019, and December 20, 2019, Plaintiff was disciplined for "being just a few minutes

---

[3]    Tenured teachers in New York state are subject to termination for "just cause" under New York Education Law Section 3020. *See* N.Y. Educ. Law § 3020. Through a Section 3020-a hearing, they may challenge any disciplinary action filed and defend the right to retain their position. *See Cutaneo v. N.Y.C. Dep't of Educ.*, No. 23-cv-753, 2024 WL 3362215, at *1 n.2 (E.D.N.Y. Feb. 29, 2024).

3

late to class" and received corresponding disciplinary letters.  *Id.* ¶¶ 14, 16, 21.  On September 15, 2021, Lazerson filed Section 3020-a disciplinary charges seeking Plaintiff's termination, after which Plaintiff was reassigned to administrative duties.  *Id.* ¶ 29.

Construing the Complaint liberally, Plaintiff asserts the following:  (1) a First Amendment retaliation claim premised on poor observation reports, disciplinary letters, and the Section 3020-a charges, *id.* ¶¶ 31, 34; and (2) a *Monell* claim against the DOE.[4]  Defendants move to dismiss on three grounds:  that most of Plaintiff's claims are time-barred; that her speech is not protected by the First Amendment; and that she fails to state a *Monell* claim against DOE.  *See* ECF No. 19-1 ("Memorandum in Support of Motion to Dismiss").

## LEGAL STANDARD

### I.     Federal Rule of Civil Procedure Rule 12(b)(6)

"In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "In making this assessment, the court must accept as true all of the factual allegations set out in plaintiff['s] complaint, draw inferences from those allegations in the light most favorable to

---

[4]     Although Plaintiff has not explicitly alleged a *Monell* claim in her Complaint, in light of Plaintiff's *pro se* status, the Court evaluates her claims as if she had brought a *Monell* claim in order to construe the Complaint to raise the strongest arguments it suggests.  *See McKinnies v. City of New York*, No. 23-cv-2567, 2024 WL 4333703, at *12 (E.D.N.Y. Sept. 27, 2024).

4

plaintiff, and construe the complaint liberally." *VR Glob. Partners, L.P. v. Petróleos de Venezuela, S.A.*, No. 24-1176, 2024 WL 4891271, at *2 (2d Cir. Nov. 26, 2024).

## II.    Plaintiff's *Pro Se* Status

A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings. *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir. 2020). "A *pro se* litigant, however, is not exempt 'from compliance with relevant rules of procedural and substantive law.'" *Ramos-Nunez v. United States*, No. 14-102, 2019 WL 1300811, at *4 (S.D.N.Y. Mar. 21, 2019) (quoting *Traguth v. Zuck*, 710 F.2d 90, 96 (2d Cir. 1983)).

## III.   Statute of Limitations

Section 1983 actions filed in New York are subject to a three-year statute of limitations. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Section 1983 actions filed in New York are [ ] subject to a three-year statute of limitations."); *see also Steinbergin v. City of New York*, No. 21-cv-536, 2022 WL 1231709, at *2 (2d Cir. Apr. 27, 2022) (same).

## IV.    First Amendment Retaliation Structure

"To establish First Amendment retaliation by a government actor, the plaintiff must demonstrate that (1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 94 (2d Cir. 2020).

5

To determine whether a public employee's speech is protected, a court considers: "(1) whether the subject of the employee's speech was a matter of public concern, and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Jackler v. Byrne,* 658 F.3d 225, 235 (2d Cir. 2011) (citing *Garcetti v. Ceballos,* 547 U.S. 410, 420–22 (2006)). If the answer to either question is no, the court's inquiry ends there. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82–83 (2d Cir. 2022). A matter of public concern is a topic that is related to "any matter of political, social, or other concern to the community." *Agosto*, 982 F.3d at 95. To assess whether a plaintiff spoke as an employee or a citizen, the court determines whether the employee's speech was in the scope of her duties. *Shara*, 46 F.4th at 83–84.

With respect to the second element of the First Amendment retaliation analysis, Plaintiff must demonstrate that Defendants took an adverse employment action against her that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012).

Finally, "[t]o demonstrate a causal connection, a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action." *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

### V.     *Monell* Liability

"To succeed on a *Monell* claim, [P]laintiffs must demonstrate that a policy or custom of the [municipality] caused a deprivation of their federal or constitutional rights." *Nixon v. City of New York*, 668 F. Supp. 3d 143, 152 (E.D.N.Y. 2023); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978) (holding that a local government can only be sued under Section 1983 when execution of a government's policy or custom causes injury); *Frank v. Sachem Sch.*

*Dist.*, 84 F. Supp. 3d 172, 193 (E.D.N.Y. 2015) ("[S]chool districts . . . are considered to be local governments and are subject to the same standards of liability as local governments under *Monell.*"), *aff'd,* 633 F. App'x 14 (2d Cir. 2016).  The elements of a *Monell* claim are:  (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right.  *Accarino v. Town of Monroe*, 857 F. App'x 49, 50 (2d Cir. 2021).  With respect to the first element:

> A policy or custom may be established by any of the following:  (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decisionmaking authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff.

*Beltran v. City of New York*, No. 19-cv-4647, 2020 WL 4260990, at *3 (S.D.N.Y. July 22, 2020).

## DISCUSSION

### I.    Statute of Limitations

Defendants contend that the instances of Plaintiff's speech that occurred before September 16, 2021, are time-barred because they arose more than three years before this action was filed on September 16, 2024.  ECF No. 19-1 at 9.  Plaintiff responds that the continuing violation doctrine saves those earlier claims.  *See* ECF No. 25 at 17–19.  The Court disagrees.

"The continuing violation doctrine provides that '[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last [violation].'"  *Flores v. United States,* 885 F.3d 119, 122 (2d Cir. 2018) (quoting *Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir. 1994)).  "To qualify as continuing, the claimed actions must not be discrete acts, but repeated conduct that occurs over a series of days or perhaps years."  *Zoulas v. N.Y.C. Dep't of Educ.*, 400

7

F. Supp. 3d 25, 49 (S.D.N.Y. 2019) *accord Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002). Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplinary actions, negative performance reviews, termination, failure to promote, and denial of a preferred job position. *See, e.g., Glaser v. Fulton-Montgomery Cmty. Coll.*, 50 F. App'x 17, 20 (2d Cir. 2002); *Sirisena v. City Univ. of New York*, No. 17-cv-7135, 2019 WL 1493220, at *5 (E.D.N.Y. Mar. 31, 2019); *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 663 (E.D.N.Y. 2015). However, "[a]s a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit." *Trinidad v. N.Y.C. Dep't of Corr.* 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006); *see also Cavanaugh v. Northwell Health, Inc.*, No. 21-cv-1381, 2025 WL 904314, at *5 (E.D.N.Y. Mar. 24, 2025).

Given that Plaintiff filed the instant action on September 16, 2024, *see* ECF No. 1, any acts occurring before September 16, 2021, fall outside the three-year limitations period. *See Hogan*, 738 F.3d at 517. As noted above, nearly all of the conduct alleged in the Complaint predates that cutoff. The only arguably timely basis for the action is the Section 3020-a disciplinary charges filed against Plaintiff on September 15, 2021.[5] ECF No. 1 ¶ 29.

Although all but one of Plaintiff's allegations predate the limitations period, she argues that they nonetheless may be considered under the continuing violation doctrine, because she alleges: (1) adverse action "within the three-year limitations"; and (2) the fact that the "adverse employment actions [fall outside the limitations period] . . . constitute a continuing violation as

---

[5]  Because the September 15, 2021, Section 3020-a disciplinary charges technically fall outside the three-year limitations period, Defendants first described those charges as an "arguably timely action," *see* ECF No. 19-1 at 13 n.3, but later as "Plaintiff's only timely allegation," because Plaintiff alleges that she was not served with the charges until September 17, 2021, *see* ECF No. 28 ("Reply") at 7. For purposes of this motion, the Court adopts Defendants' description and treats Plaintiff's claims concerning the Section 3020-a charges as timely.

8

they form a series of ongoing continuous retaliation that resulted in Defendants attempting to terminate [her] employment." ECF No. 25 at 17. The Court disagrees because the alleged adverse actions are discrete acts to which the continuing violation doctrine does not apply. First, Plaintiff claims that Mazzarelli issued "poor ratings" following several classroom observations in 2019 and 2021, *see* ECF No. 1 ¶¶ 9, 13, 18, 20, 27, but "[u]nsatisfactory ratings and negative evaluations are discrete acts," *Yang v. Dep't of Educ. of the City of New York*, No. 14-cv-7037, 2016 WL 4028131, at *5 (E.D.N.Y. July 26, 2016). Likewise, her disciplinary meetings in April and December 2019, and the resulting disciplinary letters, are discrete acts. *See Zoulas*, 400 F. Supp. 3d at 49. Finally, her reassignment from teaching duties and the Section 3020-a charges in September 2021, ECF No. 25 at 18, are discrete acts that do not constitute continuing violations, *see Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature."); *see also Lyons v. New York*, No. 15-cv-3669, 2016 WL 5339555, at *3 (S.D.N.Y. Sept. 22, 2016) ("[T]ransfers . . . are . . . discrete acts which do not constitute a continuing violation for statute of limitations purposes.").

Plaintiff's reliance on *Byas v. Yonkers Pub. Sch.*, No. 23-cv-8437, 2025 WL 963977 (S.D.N.Y. Mar. 31, 2025), is misplaced. In *Byas*, the court applied the continuing violation doctrine to Title VII discrimination and retaliation claims based on an alleged hostile work environment. 2025 WL 963977, at *7. Here, unlike *Byas*, Plaintiff alleges discrete adverse employment actions, not a hostile work environment. The continuing violation doctrine, therefore, does not apply. Thus, Plaintiff's First Amendment claims can rest only on the Section 3020-a disciplinary charges, and all other alleged adverse acts are time-barred.

## II.        First Amendment Retaliation under Section 1983

Having determined that only one alleged adverse act is timely, the Court turns to Plaintiff's claim pursuant to Section 1983.  Plaintiff alleges that the following instances constitute protected speech:  (1) the UFT Complaint regarding Lazerson's failure to attend a meeting for curriculum and school safety, ECF No. 1 ¶ 8 ("Instance One"); (2) Grievance One, concerning the observation plan for a teacher, *id.* ¶ 10 ("Instance Two"); (3) Grievance Two, concerning the vote to modify the school bell schedule, *id.* ("Instance Three"); (4) Plaintiff's March 19, 2019, statements about the "excessive paperwork" requirements on teachers and the lack of basic school supplies, *id.* ¶ 12 ("Instance Four"); (5) Plaintiff's May 22, 2019, statement about IEP compliance and Lazerson's exit meeting, *id.* ¶ 15 ("Instance Five"); (6) Plaintiff's two OSI testimonies on October 2, 2019, and February 1, 2021, regarding Lazerson's alleged falsification of grades, and failure to provide mandated student services, *id.* ¶¶ 17, 24 ("Instance Six"); and (7) Plaintiff's testimonies in two former teachers' Section 3020-a proceedings in December 2019 and April 2021, *id.* ¶¶ 19, 26 ("Instance Seven").

In support of their Motion, Defendants argue that Plaintiff fails to plead facts showing that she was retaliated against for engaging in any speech protected by the First Amendment. ECF No. 19-1 at 11–13.  Specifically, they contend that "Plaintiff did not speak as a private citizen and/or engage in speech constituting a matter of public concern." *Id.* at 12.  In addition, Defendants assert that Plaintiff fails to allege a causal connection between her alleged protected speech and the "only arguably timely action about which she complains, the service of 3020-a disciplinary charges in September 2021." *Id.* at 13.

10

Plaintiff responds that her speech as a union chapter leader was on matters of public concern, and "ha[s] nothing to do with [her] employment within the DOE as an English . . . teacher." ECF No. 25 at 11–13.  Again, the Court disagrees.

Plaintiff's speech does not qualify for First Amendment protection.  Most of the instances of speech fall outside the scope of First Amendment protection because they do not involve matters of public concern.  The remaining instances do not garner First Amendment protection either, as Plaintiff was not speaking as a private citizen.  The Court addresses those two categories in turn.

### A.   Plaintiff's Speech did not Involve Matters of Public Concern

The Court finds that Plaintiff's speech in Instances Two, Three, Five, and Seven do not address matters of public concern.  For speech to touch upon a matter of public concern, it must relate to "political, social, or other concern to the community and be of general interest or of legitimate news interest."  *Agosto*, 982 F.3d at 95.  "For public employees, speech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection."  *Id.*  In this analysis, the "forum in which a petition is lodged will be relevant to the determination whether the petition relates to a matter of public concern" because a "petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context."  *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011) *accord Agosto*, 982 F.3d at 95.

Here, several instances of Plaintiff's speech do not address matters of public concern. Instances Two and Three are internal grievance procedures,[6] which suggests they lack a matter of public concern. *See Agosto*, 982 F.3d at 96 ("[T]hat [plaintiff] filed an internal grievance suggests his actions were not related to a matter of public concern."). Moreover, Instance Two concerns only a teacher's observation plan and thus relates solely to that teacher's employment conditions. ECF No. 1 ¶ 10; *see Bernheim v. Litt,* 79 F.3d 318, 324–25 (2d Cir. 1996) (holding grievances that relate solely to a public employee's individual employment situation are matters of private interest and therefore are not protected by the First Amendment). Instance Three concerns the school bell schedule, which is clearly not a matter of public concern. ECF No. 1 ¶ 10; *cf. Cutaneo*, 2024 WL 3362215, at *7 (E.D.N.Y. Feb. 29, 2024) (finding the date for school's open house and school safety concerns are not matters of public concern). Plaintiff's notice to Lazerson on May 2, 2019 (Instance Five), regarding Lazerson's exit meeting, and Plaintiff's respective testimony in two former teachers' Section 3020-a proceedings (Instance Seven), also concern individual employment disputes rather than matters of public concern. *See Bernheim,* 79 F.3d at 324–25.

Plaintiff contends that her speech is protected because she spoke as a union official. ECF No. 25 at 12. Although union-related speech may address matters of public concern, the Second Circuit has "rejected the notion that all activities undertaken through a union necessarily become matters of public concern merely by virtue of their collateral connection to the union." *Shara*, 46 F.4th at 85; *see also, e.g.*, *Lynch v. Ackley*, 811 F.3d 569, 581–82 (2d Cir. 2016) (finding no public concern where a plaintiff filed a union grievance based on management's presence at a

---

[6]   Plaintiff does not specify whether she invoked the DOE or I.S. 162 grievance procedure, but that distinction does not affect the Court's analysis.

12

union meeting about a labor-management dispute); *Agosto*, 982 F.3d at 95–97 (finding no public concern where a public school teacher lodged several union grievances based on his manager's alleged failure to comply with collective bargaining agreement and interference with union activities). Plaintiff contends that her speech was made pursuant to her duties as a UFT chapter leader, but those instances of speech are not a matter of public concern. And Plaintiff's speech is not principally related to union activity; it is collateral. In any event, for the reasons discussed above, the Court finds that the second, third, fifth, and seventh instances of speech do not address matters of public concern and, therefore, are not subject to First Amendment protection.

B.     *Plaintiff was not Speaking as a Private Citizen*

The remaining instances of speech—the first, fourth, and sixth instances—also fail to qualify for First Amendment protection because Plaintiff was not speaking as a private citizen. For a public employee to demonstrate that she spoke as a private citizen, she must establish that her speech fell "outside of [her] official responsibilities." *Shara*, 46 F.4th at 83. "[S]peech may be pursuant to an employee's official duties when it is part-and-parcel of the employee's concerns about [her] ability to properly execute [her] duties." *Id*. Whether a public employee's speech was "pursuant to" her job duties is a "practical" inquiry, and a court should not "constru[e] a government employee's official duties too narrowly" by relying solely on a formal job description. *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 202 (2d Cir. 2010).

Here, the first, fourth, and sixth instances of speech were made in the context of Plaintiff's duty as a teacher, not as a private citizen. In those instances, Plaintiff raises concerns about curriculum and school safety (Instance One); excessive paperwork for teachers and the lack of basic school supplies (Instance Four); and the alleged falsification of grades and failure to provide mandated services to English language learners and special education students (Instance Six). ECF No. 1 ¶¶ 8, 12, 17, 24. Such speech was pursuant to Plaintiff's official duties as a

13

teacher because they were "part-and-parcel" of her ability to "properly execute [her] duties," and therefore constitute speech of an employee, not a citizen. *Weintraub*, 593 F.3d at 203; *Woodlock v. Orange Ulster B.O.C.E.S.,* 281 F. App'x 66, 68 (2d. Cir. 2008) (complaints to supervisor about lack of classes for special education students not protected); *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-cv-02101, 2012 WL 1077677, at *15 (E.D.N.Y. Mar. 30, 2012) (finding internal complaints by teachers regarding "safety issues, staffing/service issues, violation of school policy, or misuse of school property/information . . . constitute speech as a public employee"); *see also Ehrlich v. Dep't of Educ. of N.Y.*, No. 11-cv-04114, 2012 WL 424991, at *3 (S.D.N.Y. Feb. 6, 2012) ("[C]ourts have routinely held as a matter of law that a teacher's advocacy on behalf of her students falls squarely within her official duties as a teacher.").

Taken together, in all the instances of speech that Plaintiff alleges are protected by the First Amendment, she fails to plausibly allege that they involved matters of public concern, or that she was speaking as a private citizen.

   C. *There is no Causal Connection Between Plaintiff's Speech and the Adverse Action*

Further, even if Plaintiff plausibly alleged that her speech was protected, the Court agrees with Defendants that there is no causal connection between Plaintiff's speech and the Section 3020-a charges, the only timely alleged adverse action. *See* ECF No. 28 at 12. The five-month gap between Plaintiff's last alleged speech in April 2021 and the Section 3020-a charges in September 2021 breaks the causal inference. *See Skrine v. City of New York*, No. 22-cv-04022, 2024 WL 3938004, at *3 (E.D.N.Y. Aug. 26, 2024) ("Though temporal proximity can in itself establish causation, . . . most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference.").

14

In sum, Plaintiff's First Amendment retaliation claims fail to state a claim for which relief can be granted. Accordingly, these claims are dismissed.

### III.   *Monell* Claim

Although Plaintiff has not explicitly alleged a *Monell* claim in her Complaint, the Court evaluates her claims as if she had brought a *Monell* claim to construe the Complaint to raise the strongest arguments it suggests. *McKinnies*, 2024 WL 4333703, at *12. "It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation." *Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (finding that a district court does not need to address *Monell* liability if it finds no underlying constitutional violation). Applying this standard, the Court need not consider Plaintiff's *Monell* claim. As previously discussed, the Court concludes that there was no constitutional violation because Plaintiff's speech was not protected by the First Amendment. It necessarily follows that there can be no *Monell* liability with respect to that claim. *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 658 (S.D.N.Y. 2021) ("Because the Court concluded above that [plaintiff's Section 1983] claims fail, it follows that there can be no municipal liability with respect to these claims.").

Further, Plaintiff has failed to adequately plead any persistent and widespread custom or practice within the DOE that can sustain her *Monell* claim. Plaintiff alleges that a widespread practice exists because she and "the prior [c]hapter [l]eader were subject to retaliation at I.S. 162, and [that] the DOE failed to correct it despite numerous internal complaints and grievances." ECF No. 1 ¶ 32; ECF No. 25 at 20. However, the only two instances of alleged retaliation are insufficient to support a claim of a widespread pattern or practice. *See Stokes v. Wayne Cnty.*, No. 21-cv-06657, 2025 WL 755437, at *18 (W.D.N.Y. Mar. 10, 2025) ("Two incidents are not

15

sufficient to establish a persistent and widespread practice necessary to maintain a *Monell* claim."); *see also McLennon v. City of New York*, 171 F. Supp. 3d 69, 95–96 (E.D.N.Y. 2016) (finding that allegations of six incidents of unlawful seizures at traffic checkpoints were insufficient to show a municipal custom); *Doe v. Cnty. of Rockland*, No. 21-cv-6751, 2023 WL 6199735, at *10 (S.D.N.Y. Sept. 22, 2023) (finding several instances of alleged sexual harassment and additional instances of disparaging comments are insufficient for a widespread pattern or practice).

The Court therefore dismisses the *Monell* claim.

### IV. Leave to Amend

In her Opposition, Plaintiff requests leave to amend the Complaint to address any deficiencies identified by the Court, "if the Court is inclined to find that more factual detail is necessary." ECF No. 25 at 7. Although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," here, the Court declines to grant Plaintiff leave to amend. *See Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).

"A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90–91 (2d Cir. 2023) (affirming denial of leave to amend). When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Of course, an opportunity to amend is not required where, as here, "[t]he problem with [the plaintiff's] cause of

16

action is substantive" such that "better pleading will not cure it." *Id.* Thus, "[w]here granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Here, as an initial matter and as discussed above, the majority of Plaintiff's claims are untimely. With respect to the time-barred claims, "[b]etter pleading would not cure this defect in these claims, and leave to amend these claims is therefore [properly] denied." *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238 (E.D.N.Y. 2015); *Grace v. Rosenstock,* 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."); *see also Bridgeforth v. U.S. Navy Recruitment Office,* No. 11-cv-431, 2011 WL 5881778, at *2 (N.D.N.Y. Nov. 23, 2011) ("Amendment would be futile here because Plaintiff's claims arise from events . . . that occurred more than three years before he commenced this Section 1983 action. Thus, his claims are time barred, and amendment would be futile."); *Vargas v. Ciarletta,* No. 09-cv-8981, 2010 WL 4447636, at *1 (S.D.N.Y. Nov. 4, 2010) ("[I]f the claims the plaintiff seeks to add would be barred by the applicable statute of limitations, amendment would be futile and leave to amend should be denied.").

Further, Defendants filed a pre-motion letter that previewed for Plaintiff the grounds on which they intended to move to dismiss her Complaint. ECF No. 16 ("Defendants' Pre-Motion Letter"). In its March 3, 2025, Order, the Court gave Plaintiff her first opportunity to request leave to amend by filing a responsive letter that "address[es] whether Plaintiff believes the complaint can be amended to address the issues raised in Defendants' letter." Mar. 3, 2025, Text Order. Plaintiff did not take advantage of this opportunity. Nor did she indicate in her pre-motion response that she wished to amend her Complaint to address the arguments raised by

17

Defendants in their pre-motion letter. ECF No. 18 ("Plaintiff's Pre-Motion Letter"). Then, in her Opposition, Plaintiff largely repeats the same conclusory allegations from her Complaint. *See* ECF No. 25.

Moreover, where, as here, "the plaintiff is unable to demonstrate that [s]he would be able to amend [her] complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 53 (2d Cir. 1999). The fact that Plaintiff's Opposition does not explain how she intends to amend her Complaint is sufficient reason by itself to deny leave to amend. *See Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (affirming denial of leave to amend where "plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss" and "included no proposed amendments"); *Goodman v. City of New York*, No. 23-cv-9648, 2024 WL 3532921, at *20 (S.D.N.Y. July 25, 2024) ("[*Pro se*] Plaintiff provides no indication of how he would amend the complaint in order to state a claim against any named defendant. Thus, leave to amend must be denied for this reason alone.").

Finally, in light of its duty to liberally construe *pro se* complaints, the Court has considered whether to grant Plaintiff leave to amend her Complaint but finds that amendment would be futile. *See Johnson v. U. of Rochester Med. Ctr.*, 642 F.3d 121, 124–25 (2d Cir. 2011). First, the Court has broadly construed Plaintiff to have brought a *Monell* claim despite the fact that she has not explicitly alleged a *Monell* claim in her Complaint. Second, the Complaint gave "no indication that [Plaintiff] could have stated a colorable [First Amendment] claim had [s]he been granted leave to amend." *Petway v. N.Y.C. Transit Auth.,* 450 F. App'x 66, 67 (2d Cir. 2011).

18

Plaintiff cannot cure the constitutional defects because adding further factual allegations about the instances of speech she already alleges would not alter the Court's conclusion that the speech is not subject to First Amendment protection. Stated otherwise, because the instances of speech at issue do not address matters of public concern, or were made in her capacity as an employee, rather than as a private citizen, Plaintiff cannot add facts to revive First Amendment protection that does not exist. *See Kristoffersson on behalf of R.R. v. Port Jefferson Union Free Sch. Dist.*, No. 23-7232, 2024 WL 3385137, at *5 (2d Cir. July 12, 2024) (finding leave to amend would have been futile because plaintiff has not identified factual allegations she would add to the complaint to state a plausible First Amendment claim); *see also Jones-Bey v. Stanislov*, No. 23-cv-5599, 2024 WL 3520636, at *6 (S.D.N.Y. July 23, 2024) ("Because Plaintiff fails to allege a constitutional violation and provides no basis to conclude that any amendment could remedy her pleadings, the Court has determined that granting Plaintiff leave to amend would be futile."). Without a viable First Amendment claim, any amendment of Plaintiff's *Monell* claim would also be futile.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss, ECF No. 19, and DISMISSES Plaintiff's Complaint in its entirety pursuant to Rule 12(b)(6).  The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

                                                        */s/ Hector Gonzalez*
                                                         HECTOR GONZALEZ
                                                         United States District Judge

Dated: Brooklyn, New York
         January 7, 2026